IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CR-17-146-R |
| | ) | |
| TERRY DALE RAY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Ray, who stands charged with violating 18 U.S.C. § 842(i)(1), felon in possession of explosives, and 18 U.S.C. § 922(g)(1), felon in possession of a firearm, filed a Motion to Suppress (Doc. No. 22), addressing oral statements and any fruits thereof with regard to certain interrogations by law enforcement personnel. He filed a second Motion to Suppress (Doc. No. 29), alleging that the affidavit in support of a search warrant for the home he occupied contained material false statements in violation of Franks v. Delaware, 438 U.S. 154, 155-56 (1978). The United States responded to the motions and the Court conducted a hearing on March 21, 2018, and requested that the parties each file proposed findings and conclusions. Having considered the parties' submissions, the Court finds as follows.

At approximately 11:57 p.m. on Saturday, April 1, 2017, Deputy Dylan King of the Custer County Sheriff's Department initiated a traffic stop of a Chevrolet pickup truck near State Highway 183 and County Road 970, after observing that the tag lamp on the truck was inoperable. While approaching the vehicle he noticed it carried an expired and

1

improperly displayed tag. When Deputy King approached Mr. Ray, the driver and only occupant of the truck, Mr. Ray stated he did not have a driver's license, only a state identification card. Deputy King asked Defendant to sit in the front of his patrol car while he ran a license check. There is no dispute that the traffic stop and Mr. Ray's arrest for driving under suspension were proper, as Mr. Ray admittedly lacked a driver's license and informed Deputy King of an arrest two weeks prior for the same offense.[1] Once he obtained confirmation that Mr. Ray's driving privileges were suspended and because he had recently been arrested for the same offense, Deputy King asked Defendant to step out of and to the front of the patrol vehicle for purposes of an arrest. Pursuant to the lawful arrest, Deputy King searched Defendant and discovered a knife in his pocket and a packet of Marlboro cigarettes that contained a baggie; the baggie appeared to contain methamphetamine. Deputy King inquired whether there was anything else in the pickup truck; Defendant stated there was a pipe inside.

Defendant became distressed during the arrest and made statements that concerned Deputy King as posing a potential suicide risk. Deputy King returned Defendant, now wearing handcuffs, to the front of the patrol vehicle and called for assistance from Deputy Quinton Short. While awaiting Deputy Short's arrival, Deputy King began an inventory search of Defendant's truck, which was to be towed and impounded because of Defendant's detention. An inventory search is consistent with the policy of the Custer

---

[1] Defendant also admitted to Deputy King that the tag would not match the vehicle, Defendant having removed the tag from his mother's vehicle when it was impounded as a result of his prior offense.

2

County Sheriff's Department, to ensure that personal belongings of the arrestee are properly accounted for as well as to preserve evidence.

There is no dispute that, when Deputy Short arrived, he made inquiry of Defendant Ray regarding his mental health and where the pipe was located in the vehicle, as well as other questions, without the benefit of being informed of his right to remain silent and the consequences of failing to do so, warnings generally required by *Miranda v. Arizona,* 384 U.S. 436 (1966). During the course of these dialogues, Defendant advised the deputies as to the location of the methamphetamine pipe and further advised that there was a blasting cap, a primary explosive device generally used to detonate a larger device, in the vehicle. Defendant contends statements he made following his arrest on April 1, 2017, were in response to interrogation by Deputies King and Short in violation of his rights under the Fifth Amendment, because he was not first advised of his rights.

The Fifth Amendment's self-incrimination clause states: "No person shall be ... compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Statements made by a defendant during a law enforcement officer's custodial interrogation are generally inadmissible against that defendant if he had not received the warnings that *Miranda* requires. *See Dickerson v. United States*, 530 U.S. 428, 444 (2000). *Miranda* applies custodial interrogations. That is, "*Miranda* rights need only be given to a suspect at the moment that suspect is 'in custody' and the questioning meets the legal definition of 'interrogation.'" *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008) (quoting *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993)). Any questioning by law enforcement officers "reasonably likely to elicit an incriminating response" constitutes an

interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). As noted above, there is no dispute that Defendant was in custody once handcuffed and returned to the patrol vehicle. Thus, the Court's *Miranda* inquiry is limited in time to the period after Defendant was returned to the patrol vehicle wearing handcuffs, when Deputy Short asked him certain questions. Defendant contends the questions constituted custodial interrogation, and the Court agrees. The Court concurs with the Government that Deputy King did not violate Defendant's rights by inquiring whether he had on his person anything that could injure Deputy King while he searched Defendant incident to arrest. However, the questions posed by Deputy Short extended beyond the scope of permissible inquiry, and the public safety exception set forth in *New York v. Quarles*, 467 U.S. 649 (1984), does not extend to circumstances where, as here, there is no general danger to the public.

The Tenth Circuit discussed the public safety exception upon which Plaintiff relies in *United States v. DeJear*, 552 F.3d 1196 (10th Cir. 2009:

> For an officer to have a reasonable belief that he is in danger, at minimum, he must have a reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it.

522 F.3d at 1201-02 (quoting *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007). In this case, Deputy King stopped Defendant Ray on a country road, and before Ray indicated the presence of a blasting cap in response to inquiries by Deputy Short, there was no discernible or anticipated danger to the officers or the public. Ray had been searched incident to arrest and handcuffed; there was no basis for believing anyone might be in harm's way based on Deputy King's finding of methamphetamine and a knife. As a result,

the Court finds that statements made by Defendant in response to inquiry by Deputy Short are inadmissible, because Defendant was not advised of his rights as required by *Miranda*.

Despite the inadmissibility of Defendant's statements made after his arrest on April 1, 2017, the physical evidence obtained from the truck, including the blasting cap, is not subject to exclusion. The Court's reasoning is twofold. First, the constitutional rule announced in *Miranda* is violated by admission at trial of statements made by a Defendant; "[t]he Self-Incrimination Clause . . . is not implicated by evidence of the physical fruit of a voluntary statement." *United States v. Patane*, 542 U.S. 630, 636 (2004). Furthermore, because the vehicle was subject to inventory search, such search inevitably would have revealed the presence of the blasting cap.

> [T]he *Miranda* rule "does not require that the statements [taken without complying with the rule] and their fruits be discarded as inherently tainted," *Elstad*, 470 U.S. at 307, 105 S.Ct. 1285. Such a blanket suppression rule could not be justified by reference to the "Fifth Amendment goal of assuring trustworthy evidence" or by any deterrence rationale, *Id.*, at 308, 105 S.Ct. 1285; see *Tucker, supra*, at 446-449, 94 S.Ct. 2357; *Harris, supra*, at 225-226, and n. 2, 91 S.Ct. 643, and would therefore fail our close-fit requirement.

*Patane*, 542 U.S. at 639-40. It is not the absence of warnings that violates a defendant's constitutional rights; it is admission of such statements at trial that violates the rights protected by the Self-Incrimination Clause. *Id.* at 641. Finally, there is no evidence that the statement of Defendant regarding the blasting cap in his vehicle given to Deputy Short on April 1, 2017 was coerced. "Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne are coerced confessions." *United States v. Short*, 947 F.2d 1445, 1449 (10th Cir. 1991).

Defendant contends that Deputy Short knew or should have known about his mental health issues, however, the evidence elicited at the hearing does not support this contention. Although it is true that Defendant has received mental health treatment in the past, and is currently receiving treatment, there is no evidence that Deputy Short was aware of specific information or that he exploited such in an effort to coerce Defendant to make a statement.[2] *See United States v. Guerro*, 983 F.2d 1001, 1003 (10th Cir. 1993) ("While the defendant's mental condition is an important consideration, to find a statement involuntary, the police must somehow overreach by exploiting a weakness or condition known to exist."). Having watched the video from the events surrounding Defendant's arrest and considered Deputy Short's testimony, the Court finds no basis for concluding that Defendant's indication that the truck contained a blasting cap was involuntary. Thus, he is not entitled to suppression thereof.

---

[2] On cross-examination at the Court's hearing the following exchange occurred between defense counsel and Deputy Short:
> Q: Did you also know that he had mental health issues other than this suicide threat that he was making?
> A: I had heard he had been to Red Rock before, but I – as far as his history of mental health, I didn't know it.
> Q: Okay. Who did you hear that he had been to Red Rock before?
> A: From one of our other deputies.
> Q: Who was that?
> A: I can't recall. They were discussing his arrest from the previous two weeks, or whatever it was, and somebody had said he had been to Red Rock prior to mental health issues.
> Q: And do you remember who when you heard that?
> A: No, I don't. I was in there doing something else and overheard them talking about it in an office next to me.
> ***
> Q: Did they say how long he was at Red Rock?
> A; No.
> Q: What's your understanding of why people have to go to Red Rock?
> A: There's multiple different reasons, drug use, mental health issues, counseling. They do a lot of different things there.

Tr. 55-56.

Furthermore, even without the authority of *Patane* or even if his statement to Deputy Short about the blasting cap in the truck was involuntary, it would not be appropriate to suppress the blasting cap and other items obtained from Defendant's truck. The Fourth Amendment of the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Although generally a warrant supported by probable cause is necessary before police may effect a search or seizure, "[a]n inventory search is a well-defined exception to the warrant requirement of the Fourth Amendment." *United States v. Haro-Salcedo*, 107 F.3d 769, 772 (10th Cir. 1997). An inventory search is "an administrative procedure designed to produce an inventory" of the personal belongings of an arrestee to protect items from theft and to protect police against claims that items were lost or stolen while in their custody. *Id.* Such a search is also designed to protect police from potential danger. *Id.* "The inevitable discovery doctrine provides an exception to the exclusionary rule, and permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it." *United States v.* Cunningham, 413 F.3d 1199, 1203 (10th Cir. 2005)(citations and quotations omitted). Defendant asserts in his Proposed Findings of Fact and Conclusions of Law that the blasting caps would not have inevitably been found in the inventory search, and therefore suppression is appropriate. (Doc. No. 49, p. 14). Although the two Deputies originally could not identify the blasting cap as such, the law in the Tenth Circuit is that "the Government can rely on a hypothetical, proper inventory search to prove seized evidence would have been inevitably discovered." *United States v. Killblane*, 662 Fed. Appx. 615, 619 (10th Cir. Oct. 13, 2016). Here a proper

inventory search would have revealed the presence of the blasting caps, and accordingly, Defendant is not entitled to suppression of the blasting cap from the vehicle.

Defendant additionally argues that the statements he made to certain agents of the Department of Alcohol, Tobacco, Firearms and Explosives ("ATF") were involuntary and are therefore inadmissible. As part of the hearing on the Motions to Suppress, the parties presented evidence regarding the voluntariness of Defendant's statements, as required under *Jackson v. Denno.* Under *Jackson v. Denno,* 378 U.S. 368 (1964), when a defendant timely objects to the admission of an incriminating statement, he must receive a hearing outside the presence of the jury to determine "both the underlying factual issues and the voluntariness of his confession." *Id*. at 380; *see also* 18 U.S.C. § 3501 ("Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issues as to voluntariness."). The burden is on the government to prove by a preponderance of the evidence that the statements were voluntary. *United States v. Pettigrew*, 468 F.3d 626, 633 (10th Cir.2006).

The issue of "voluntariness" is determined by "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The Court must consider the totality of the circumstances when determining whether a confession is voluntary, including certain non-exclusive factors: "(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment." *United States v. Lopez,* 437 F.3d 1059, 1063 (10th Cir. 2006). The

Court must also consider "the characteristics of the accused and the details of the interrogation" and no single factor should be treated as conclusive. *Id*. (quoting *United States v. Toles*, 297 F.3d 959, 965 (10th Cir. 2002)). "The essence of voluntariness is whether the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne." *United States v. Carrizales–Toledo*, 454 F.3d 1142, 1153 (10th Cir.2006) (quoting *United States v. Rith*, 164 F.3d 1323, 1333 (10th Cir. 1999)).

Defendant contends an analysis of these factors will establish that statements made by Defendant on April 1, 2017, at the time of his arrest, as well as those statements given to ATF agents on April 3 and 7, 2017, were not voluntary. Defendant relies largely on his mental health history. The Court has reviewed the records provided by Defendant as well as the video evidence from the statements Defendant provided on the above-identified dates and the testimony of Agent Taylor.[3] The Court finds that there was no police coercion at any time during the April 3 or 7, 2017 interviews with Defendant. Additionally, there is no evidence that either Agent Taylor or Agent Brown had a basis for knowing that Defendant had any mental health history. The video recording of the April 3, 2017 interview of Defendant shows that he participated freely in the conversation after the agents advised him of his right to remain silent and his right to counsel. He signed the waiver presented to him by the ATF agents when they advised him they could not speak about the blasting caps without his signature. He asked no questions regarding the waiver.

---

[3] The Court has addressed the admissibility of Plaintiff's post-arrest statements on April 1, 2017, under *Miranda* above, and therefore need not address that statement in this section.

9

Defendant was fifty-one years old at the time of the interrogations. He was advised of his rights and signed the waiver after the agents explained the contents of the waiver and that they could not speak with him about the blasting caps unless he signed the waiver. He asked no questions about the waiver, inquiring only whether he was under arrest. The agents explained he was already in custody, although not on federal charges, and they needed the waiver signed before they could continue. When a suspect knowingly and intelligently waives his right to counsel after receiving the Miranda warnings, he may be questioned by law enforcement. *Davis v. United States*, 512 U.S. 452, 457 (1994).

With regard to Defendant's mental health status, in *Colorado v. Connelly*, 479 U.S. 157 (1986), the Supreme Court noted:

> In *Blackburn*, the Court found that the petitioner was probably insane at the time of his confession and the police learned during the interrogation that he had a history of mental problems. The police exploited this weakness with coercive tactics: "the eight- to nine-hour sustained interrogation in a tiny room which was upon occasion literally filled with police officers; the absence of Blackburn's friends, relatives, or legal counsel; [and] the composition of the confession by the Deputy Sheriff rather than by Blackburn." 361 U.S., at 207–208, 80 S.Ct., at 280. These tactics supported a finding that the confession was involuntary. Indeed, the Court specifically condemned police activity that "wrings a confession out of an accused against his will." *Id.*, at 206–207, 80 S.Ct., at 280. *Townsend* presented a similar instance of police wrongdoing. In that case, a police physician had given Townsend a drug with truth-serum properties. 372 U.S., at 298–299, 83 S.Ct., at 749–750. The subsequent confession, obtained by officers who knew that Townsend had been given drugs, was held involuntary. These two cases demonstrate that while mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry.

*Colorado v. Connelly*, 479 U.S. at 164–65. The evidence presented establishes no threats, promises, or coercion on behalf of the ATF agents during the April 3, 2017 interview.

Defendant repeatedly asked that the charges against him be dropped if he would identify the location of the blasting caps, and agents repeatedly informed him that would not occur. Their behavior, however, lacked any of the forbidden qualities.

The same holds true with regard to the April 6, 2017 interview. The Court has listened to the audio thereof and draws the same conclusion regarding Defendant's voluntary waiver of his rights and the voluntary nature of his statements. The ATF agents advised Defendant of his rights and he agreed to waive his rights. Thereafter he communicated regarding the location of the blasting caps, a fact about which the agents were already aware, having conducted the search of the home pursuant to the warrant. There is no indication in the audio recording that either agent coerced or overcame Defendant's will with regard to any statements he made during that interview. Accordingly, the Motion to Suppress is DENIED as it relates to Defendant's statements to the ATF agents on April 3 and April 6, 2017.

Defendant seeks suppression of the blasting caps and the gun found pursuant to the April 6, 2017 search warrant which was issued based on the affidavit of Agent Taylor. Plaintiff contends that the affidavit contained statements that Agent Taylor either knew or should have known were materially false. He thus contends that no probable cause existed to issue the search warrant if the material misstatements are removed from the affidavit.

> "When the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing." *Franks v. Delaware*, 438 U.S. 154, 164–65, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (internal quotation marks omitted). "Truthful" does not mean every fact recited in an affidavit in support of a warrant is necessarily correct; "truthful" means "the information put forth is believed or appropriately accepted by the affiant as true." *Id*. at 165, 98 S.Ct. 2674.

>Thus, an affiant violates the Fourth Amendment when he "knowingly and intentionally, or with reckless disregard for the truth," includes a false statement in the warrant affidavit. *Id.* at 155–56, 98 S.Ct. 2674.

*Marin v. King*, No. 216-2225, 2018 WL 272008, at *10 (10th Cir. Jan. 3, 2018). Defendant contends the warrant in this case contains two false statements. Paragraph 7 of Agent Taylor's affidavit states:

> When asked if there was anything illegal in the vehicle, RAY stated that there was a pipe. As deputies began to prepare an inventory of the vehicle's contents before towing, Ray told deputies that there was also a blasting cap and gunpowder located in a duffel bag in the vehicle. **RAY also told deputies that he had more blasting caps at his residence, and that he had found them.**

Affidavit, ¶ 7 (emphasis added). Defendant also contends that paragraph 10, set forth in part below, contains a misstatement:

> On April 3, 2017, your affiant, and Agent Brown, ATF, interviewed **RAY** at the Custer County Jail. I read **RAY** his Miranda rights, and **RAY** signed a rights waiver. **RAY** told agents that he stole the blasting caps, and was keeping them in a secret location at the **SUBJECT RESIDENCE**, **RAY** stated that he had two boxes of blasting caps and estimated that there were between 100 and 150 blasting caps in total. **RAY** additionally stated that he used one of the blasting caps, along with a small amount of gunpowder, to blow up a tree stump in his yard, and was surprised no one had called the police.

Affidavit, ¶ 10. Defendant asserts he did not reveal to Agent Taylor that the blasting caps were at Route 1 Box 32A Putnam, Oklahoma. Rather, he stated in the April 3, 2017 interview that the caps were in a badger hole out in the country.

With regard to the alleged misstatement in paragraph 7, that Defendant allegedly told deputies he had more blasting caps at his residence, there is no dispute that the information was false. Agent Taylor relied upon the report of Deputy Short for that

information. It is apparent from the testimony at the hearing that Agent Taylor did not intentionally include this false information in the affidavit, nor is there evidence that his reliance on the statements in Deputy Short's report was reckless. However, the government is "accountable for statements made not only by the affiant but also for statements made by other government employees which were deliberately or recklessly false or misleading insofar as such statements were relied upon by the affiant in making the affidavit." *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997). The burden falls on Defendant Ray to establish the affiant or other government employee on whom the affiant, Deputy Short, relied, "in fact entertained serious doubts as to the truth of his allegations." *Bruning v. Pixler*, 949 F.2d 352, 357 (10th Cir. 1991) (internal quotations omitted). The Court "may infer [that an affiant acted with] reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994) (internal citations omitted).

The Court finds Defendant has failed to establish that Deputy Short knowingly or recklessly submitted a false statement from his police report, upon which Agent Taylor relied in drafting the affidavit. Mere negligence or innocent mistake is insufficient to void a warrant. *See Franks*, 438 U.S. at 171. At the Court's hearing on March 27, 2018, Deputy Short testified that he believed Defendant had stated that he had additional blasting caps at his residence, and only became aware of his error two days before the evidentiary hearing, when he watched the footage from his body camera. Although the video confirms that Defendant never stated that the additional explosives were at his residence, it also established that Deputy Short relayed this incorrect information on that date, and persisted

13

in his belief that Defendant had made that statement until such time as he reviewed his video footage, two days before the Court's hearing. In sum, the Court is convinced that the evidence establishes that Deputy Short made a mistake or was at most negligent regarding Defendant's statement on April 1, 2017, and that mistake carried over to the affidavit of Agent Taylor. "Allegations of negligence or innocent mistake are insufficient" *Franks,* 436 U.S. at 171, to mandate suppression. As a result, the objectionable language in paragraph 7 need not be removed from the affidavit for consideration in this motion.

With regard to the alleged misstatement in paragraph 10 of Agent Taylor's affidavit, the Court has considered both the video of the April 3, 2017 interview and Agent Taylor's testimony regarding the same, and finds that the affidavit does not contain a misstatement that could be described as intentional or reckless. In the April 3, 2017 interview, agents requested that Defendant provide information regarding the location of the additional blasting caps. Defendant repeatedly requested that the agents ask for the charges to be dismissed if he agreed to identify the location of the remaining blasting caps. Defendant made various statements, including a statement that the caps were in a badger hole in the country. However, the interview included the following exchange, after one of the agents indicated they would seek a warrant and tear apart his house to search for the blasting caps. Defendant stated, "it ain't my house." "They're not in my house, it's not my house." He emphasized the word "my." The agent asked, "Whose house is it?" "My son's." "Does your son live there?" "No. My mom died three months ago and uh or a month and a half ago and she left him everything in the will. He got everything." When the agent followed up, Defendant stated, "They ain't at the house anyway, I just told you where they was at.

They're in a badger hole." The Court interprets Defendant's statement in the same manner as Agent Taylor testified at the hearing, that Defendant was using semantics in an effort to confuse the Agents. The Court finds that the statement was neither false nor misleading, nor intentionally or recklessly included in the affidavit by Agent Taylor.

Furthermore, even if the Court were to conclude that the statements in paragraphs 7 and 10 of Agent Brown's probable cause affidavit should be purged, the affidavit would nevertheless if purged of its falsities be sufficient to support a finding of probable cause. *Kennedy*, 131 F.3d at 1376. The affidavit indicates the Agents visited the home where Defendant Ray was residing and saw a tree stump that Ray had attempted to blast approximately four months before his arrest.[4] Furthermore, a family friend, Heath Justice, called the ATF and advised the Agents that he had received a telephone call from Mr. Ray, who was being detained. During the call, Mr. Ray asked Mr. Justice to feed his animals and to remove an item from the sofa, because the police were looking for the item. At that point Mr. Ray was fully aware that law enforcement was looking for blasting caps. Probable cause exists if "the facts presented in the [excised] affidavit would warrant a [person] of reasonable caution to believe that evidence of a crime will be found at the place to be searched." *United States v. Hernandez–Rodriguez*, 352 F.3d 1325, 1330 (10th Cir.2003).These two statements and the information provided by Mr. McCoy, which was also included in Agent Taylor's affidavit, would have been sufficient to support a finding of probable cause even without the objectionable language in paragraphs 7 and 10.

---

[4] Defendant's son, Edward McCoy, confirmed to the agents that Defendant had attempted to remove the tree stump with a blasting cap.

For the reasons set forth herein, Defendant's Motion to Suppress (Doc. No. 22) and his Motion to Suppress (Doc. No. 29) are DENIED.

IT IS SO ORDERED this 30th day of April, 2018.

*David L. Russell* (signature)

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE